# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

CHARLEIGH K. NEWHOUSE,

        Plaintiff,

v.                                         CIVIL ACTION NO. 2:19-cv-00015

SUGAR CREEK PIZZA, LLC, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Charleigh Newhouse ("Plaintiff") brings this action against Defendants Pizza Hut, LLC ("Pizza Hut"), Sugar Creek Pizza, LLC ("Sugar Creek"), and New River Pizza, LLC[1] ("New River") (collectively, "Defendants"). Before the Court are Pizza Hut's Motion to Dismiss, (ECF No. 7), and Sugar Creek and New River's Motion to Dismiss or, in the Alternative, Compel Arbitration, (ECF No. 10). For the reasons discussed below, the Court **GRANTS** the motions.

### I. BACKGROUND

This case arises out of Plaintiff's employment at a restaurant in Oak Hill, West Virginia. Plaintiff alleges she began working at the restaurant on May 1, 2014, as a server. (ECF No. 1-1 at ¶ 5.) She continued working in this capacity until her employment was terminated on December 4, 2016.[2] (*Id.* at ¶ 22.) At the start of her employment, Plaintiff executed an "Agreement to Arbitrate" with New River. The written arbitration agreement provides that

---
[1] New River Pizza, LLC is incorrectly named in the Complaint as "New River Pizza Hut." (ECF No. 10-2 at 1.)
[2] Defendants refute this allegation and contend that Plaintiff's employment with New River began on March 22, 2016 and was terminated on November 28, 2016. (ECF No. 11 at 2 nn. 3 & 4.)

Plaintiff agrees "to use binding arbitration . . . for any claims . . . that [she] may have against New River, its affiliates, and/or their current or former employees, owners, or officers . . . ."[3] (ECF No. 10-1 at 1.)

After her termination, Plaintiff filed a complaint in the Circuit Court of Fayette County, West Virginia, alleging violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and West Virginia common law claims for retaliation in violation of public policy, negligent and intentional infliction of emotional distress, and outrage against New River, Sugar Creek,[4] and Pizza Hut. (*Id.* at ¶¶ 26–76.) On January 4, 2019, Defendants removed the case to this Court asserting federal question jurisdiction under 28 U.S.C. § 1331. (ECF No. 1.)

Following removal, Pizza Hut filed a motion to dismiss on February 2, 2019, arguing that Plaintiff inadequately pleads facts against it under any theory of liability. (ECF No. 7.) Sugar Creek and New River also filed a motion to dismiss or, alternatively, to compel arbitration on February 2, 2019, contending that the arbitration agreement executed between Plaintiff and New River divests this Court of subject matter jurisdiction and requires the parties to arbitrate this dispute. (ECF No. 10.) Plaintiff has not filed a response to either motion. As the time for responding has elapsed, the motions are now ripe for adjudication.

---

[3] Specifically, the arbitration agreement reads as follows:

> New River Pizza, LLC on behalf of itself and its parents and affiliates, owners, officers and directors (collectively, "New River") and I [Plaintiff] agree to use binding arbitration, instead of going to court, for any claims, including any claims now in existence or that may exist in the future (a) that I [Plaintiff] may have against New River, its affiliates, and/or their current or former employees, owners, or officers or (b) that New River and/or its affiliates may have against me [Plaintiff]. Without limitation, such claims include any concerning wages, expense reimbursement, compensation, leave, employment (including, but not limited to, any claims concerning harassment, discrimination, or retaliation), conversion, breach of fiduciary duty, and/or termination of employment.

(ECF No. 10-1 at 1.)
[4] Defendants represent that Sugar Creek is an affiliate of New River. (ECF No. 10 at 1 n.2.)

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

### B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A challenge to subject matter jurisdiction may be either facial, which is based solely on the allegations in the pleadings, or factual, which permits the consideration of matters outside the

pleadings. *See Kerns v. United States*, 585 F.3d 187, 192–93 (4th Cir. 2009). When the challenge is factual, this Court "appl[ies] the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Richmond, Fredricksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also* Fed. R. Civ. P. 56(a) (stating that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

C. *Motion to Compel Arbitration*

The Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA") provides federal courts with the power to compel arbitration in cases where, save for the applicability of an arbitration clause, the case would fall within the court's federal subject matter jurisdiction. *See Del Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 872 (4th Cir. 2016) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). In particular, the FAA mandates that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. In such circumstances, the FAA requires that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." *Id.* at § 3.

The FAA's directive to federal and state courts is mandatory and, therefore, courts have "no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002); *see also Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001) (stating that

"[b]ecause FAA provisions are mandatory, courts must compel arbitration when a valid arbitration agreement exists"). The FAA reflects "a congressional declaration of a liberal federal policy favoring arbitration agreements . . . [and] create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone*, 460 U.S. at 24; *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 682 (2010). Indeed, the principal purpose of the FAA is to place arbitration contracts "on an equal footing with other contracts . . . and enforce them according to their terms[.]" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). "The issue whether a dispute is arbitrable presents primarily a question of contract interpretation, requiring that we give effect to the parties' intentions expressed in their agreement," with "[a]ny uncertainty regarding the scope of arbitrable issues . . . resolved in favor of arbitration." *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 179 (4th Cir. 2013); *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001) ("Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration.").

Under the FAA, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004). A party's ability to challenge a valid arbitration agreement is extremely limited; only "[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 of the FAA." *Strawn v. AT&T Mobility, Inc.*, 593 F.Supp.2d 894, 898 (S.D. W. Va. 2009) (quoting *Doctor's Assocs., Inc. v.*

5

*Casarotto*, 517 U.S. 681, 682 (1996)) (internal quotation marks omitted); *see also Concepcion*, 563 U.S. at 343 ("Although § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives."). However, "a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015) (internal quotation marks omitted).

## III. DISCUSSION

### A. Pizza Hut's Motion to Dismiss

Pizza Hut argues that the Complaint is devoid of supporting facts to draw a reasonable inference of liability against it. Specifically, Pizza Hut asserts that Plaintiff fails to plead any facts that show it employed her under a direct employer, joint employer, or integrated employer theory. The FMLA prohibits a covered employer from, among other things, taking adverse action against an eligible employee for exercising rights under the FMLA. *See* 29 U.S.C. §§ 2612, 2615(a); 29 C.F.R. § 825.100, *et seq*. The FMLA defines an "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(i). An eligible employee generally includes someone who has been employed by an "employer" for at least twelve months and has worked at least 1,250 hours in the preceding twelve months. *Id.* at § 2611(2)(A); *see also Babcock v. BellSouth Advert. & Publ'g Corp.*, 348 F.3d 73, 76–77 (4th Cir. 2003).

"Although a direct employment relationship provides the usual basis for liability", an entity may be considered an employer under the FMLA if it is an "integrated employer" or "joint

6

employer." *See Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999) *abrogated on other grounds by Arbaught v. Y&H Corp.*, 546 U.S. 500 (2006); *Shultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 305–06 (4th Cir. 2006); *West v. J.O. Stevenson, Inc.*, 164 F. Supp. 3d 751, 763 (E.D. N.C. 2016). Under the "joint employer" and "integrated employer" theories, the existence of a parent-subsidiary or principal-agent relationship may impute liability to a parent or principal for the alleged violations of its subsidiary or agent.

In the context of "joint employment," an employee can pursue a labor relations claim against multiple entities if they each "exercise sufficient control over the same employees." *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 410 (4th Cir. 2015) (quoting *Bristol v. Bd. of Cnty. Comm'rs*, 312 F.3d 1213, 1218 (10th Cir. 2002) (en banc)) (internal quotation omitted). The Fourth Circuit has recognized at least three tests—the economic realities test, the control test, and the hybrid test—for determining "whether an entity exercises control over an employee" such that it should be considered a joint employer. *Id.* at 410. In *Butler*, the Court found three factors to be most significant: "(1) authority to hire and fire the individual; (2) day-to-day supervision of the individual, including employee discipline; (3) whether the putative employer furnishes the equipment used and the place of work." *Id.* at 414 (cautioning that "control remains the principal guidepost for determining whether multiple entities can be a plaintiff's joint employers.").

By contrast, the "integrated employer" doctrine imputes liability to companies for employment violations where the companies are "so interrelated that they constitute a single employer." *Hukill*, 192 F.3d at 442. The Fourth Circuit has articulated a non-exhaustive, four-factor test to determine whether separate entities should be treated as a single employer for purposes of the FMLA: "(1) common management; (2) interrelation between operations; (3)

7

centralized control of labor relations; and (4) degree of common ownership/financial control." *Id.* (citing 29 C.F.R. § 825.104(c)(2)). Similar to the joint employer analysis, "no single factor is conclusive"; however, "control of labor operations is the most critical factor." *Id.* (citing *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 764 (5th Cir. 1997)).

Here, Plaintiff generally asserts that she was employed with "Defendant" in Oak Hill, West Virginia, (ECF No. 1-1 at ¶ 5), and assigns responsibility for alleged violations of the FMLA and West Virginia common law to this singular defendant throughout the Complaint. In particular, the Complaint alleges that "Defendant" harassed her, retaliated against her, and ultimately terminated her after she informed "Defendant's management" of her medical condition and attempted to take FMLA-protected leave. (*Id.* at ¶¶ 4–25.) Critically, however, Plaintiff fails to identify which of the three entities named employed her. More importantly, the Complaint does not allege facts from which it can be reasonably inferred that Pizza Hut employed her under any theory of employer liability. This omission is dispositive.

Of the defendants named, New River is the only defendant located in Oak Hill, West Virginia. (*Id.* at ¶ 2.) While the Complaint alleges that Pizza Hut is licensed to do business in West Virginia, Plaintiff does not assert that Pizza Hut owned or operated the Oak Hill restaurant nor does she provide any facts to connect Pizza Hut to the Oak Hill restaurant that employed her. For example, there are no facts to suggest that Pizza Hut exercised control over Plaintiff under a joint employer theory or that Pizza Hut and the Oak Hill store were interconnected under an integrated employer theory. Indeed, the Complaint fails to assert any facts related to her employment against Pizza Hut. Thus, even viewing the well-pleaded factual allegations as true and in the light most favorable to Plaintiff, the Complaint does not contain "enough facts to state

a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also West*, 164 F. Supp. 3d at 764 (finding that the complaint "must plausibly allege some facts to support either the 'joint employment' or 'integrated employer' theory or else risk undermining completely the *Twombly-Iqbal* standard of pleading", and dismissing counts against defendant where there were only conclusory allegations that it was a joint employer). For these reasons, the Court **DISMISSES** Plaintiff's Complaint against Pizza Hut for failure to state a claim.

    *B. Sugar Creek and New River's Motion to Dismiss or, in the Alternative, Compel Arbitration*

Sugar Creek and New River maintain that Plaintiff's claims must be dismissed or, alternatively, the Court should compel arbitration of Plaintiff's claims because Plaintiff is bound to an arbitration agreement under which she agreed to resolve any and all claims against New River and its parents and affiliates, owners, officer, and directors. The Court's review of Defendants' motion is limited to two threshold issues: (1) whether a valid, binding arbitration agreement exists between Plaintiff and Defendants; and (2) whether Plaintiff's claims at issue fall within the scope of the arbitration agreement. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010); *Adkins*, 303 F.3d at 500.

The Fourth Circuit has established four factors that will support a motion to compel arbitration: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [non-moving] party to arbitrate the dispute." *Id.* at 500–01 (internal quotation marks omitted); *see Muriithi*, 712 F.3d at 179 ("A court may compel arbitration of a particular dispute only when the parties have agreed to arbitrate their disputes and the scope of the parties'

9

agreement permits resolution of the dispute at issue."). The Court finds that all four elements are satisfied here.

First, it is self-evident that a dispute exists between Plaintiff and Defendants as evidenced by Plaintiff's Complaint filed in state court. *See Canyon Sudar Partners, LLC v. Cole ex rel. Haynie*, No. 3:10-1001, 2011 WL 1233320, at *11 (S.D. W. Va. Mar. 29, 2011); *Captain D's, LLC v. McClenathan*, No. 2:06-0261, 2006 WL 3409757, at *6 (S.D. W. Va. Nov. 27, 2006).

The second factor presents two essential questions, namely whether a written arbitration agreement exists between the parties and whether that agreement encompasses the claims asserted. *See Adkins*, 303 F.3d at 500–01. The record before the Court includes a two-page "Agreement to Arbitrate" and a "Policy Acknowledgment Status Report" containing Plaintiff's acknowledgment of the written arbitration agreement. (ECF No. 10-1.) The arbitration agreement broadly applies to "any claims, including any claims now in existence or that may exist in the future (a) that [Plaintiff] may have against New River, its affiliates, and/or their current or former employees, owners, or officers or (b) that New River and/or its affiliates may have against [Plaintiff]." (*Id.* at 1.) *See Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (distinguishing broad and narrow arbitration clauses). Importantly, the arbitration agreement expressly provides for all claims, including "any concerning wages, expense reimbursement, compensation, leave, employment (including, but not limited to, any claims concerning harassment, discrimination, or retaliation), conversion, breach of fiduciary duty, and/or termination of employment." (ECF No. 10-1 at 1.) As alleged in the Complaint, Plaintiff's wrongful termination and retaliation claims under the FMLA as well as her West Virginia common law claims "arise from" and are directly related to Plaintiff's employment with New River. (ECF

No. 1-1 at 2; *see also* ECF No. 10-1 at 2.) Thus, all of Plaintiff's claims fall squarely within the scope of the written arbitration agreement.

Whether the arbitration agreement is valid presents a question of applicable state law governing contract formation. *See Adkins*, 303 F.3d at 501 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). West Virginia contract principles apply in the instant case. In order for a contract to be valid under West Virginia law, there must be "competent parties, legal subject matter, valuable consideration, and mutual assent." *See Wellington Power Corp. v. CAN Sur. Corp.*, 614 S.E.2d 680, 684 (W. Va. 2005) (internal quotation omitted). West Virginia law recognizes "a presumption of validity for arbitration agreements, and places the burden of challenging that presumption on the party seeking to avoid arbitration." *Taylor v. Capital One Bank (USA), NA.*, No. 5:09-cv-00576, 2010 WL 520497, at *2 (S.D. W. Va. Feb. 10, 2010); *see also State ex rel. Clites v. Clawges*, 685 S.E.2d 693, 700 (W. Va. 2009) ("It is presumed that an arbitration provision in a written contract was bargained for and that arbitration was intended to be the exclusive means of resolving disputes arising under the contract."). Plaintiff has not filed a response to Defendants' motion and has not otherwise challenged the validity of the agreement. Consequently, Plaintiff has not overcome the presumption, and the Court must presume its validity.

Turning to the third element, the transactions underlying Plaintiff's claims relate to interstate commerce because those transactions, as alleged in the Complaint, occurred between Plaintiff, a citizen of West Virginia, (ECF No. 1-1 at ¶ 1), and New River, a limited liability company formed under the laws of the State of Ohio, (ECF No. 10-2). *See Cochran v. Coffman*, No. 2:09-cv-00204, 2010 WL 417422, at *4 (S.D. W. Va. Jan. 28, 2010) (noting that if a

transaction occurs between citizens of different states, it relates to interstate commerce); *Van Lehn v. MedaStat USA, LLC*, No. 2:05-cv-00283, 2005 WL 1845269, at *2 (S.D. W. Va. Aug. 1, 2005) (noting that the subject "transaction bears a relationship to interstate commerce because it was entered into between a citizen of West Virginia and a business incorporated in Kentucky").

Fourth, Plaintiff's failure or refusal to arbitrate her claims is inferred from her decision to institute this civil action rather than an arbitration demand. *See Captain D's, LLC*, 2006 WL 3409757, at *6; *Van Lehn*, 2005 WL 1845269, at *6 (noting that the fourth factor was satisfied because "the plaintiff has refused to arbitrate this dispute, as evidenced by her decision to file a civil action in state court rather than submit to the arbitration proceedings in the first instance."). As Defendants have demonstrated that all four factors are satisfied, Plaintiff's claims presently before this Court must be resolved pursuant to the parties' arbitration agreement.

Although the FAA provides that a court "shall . . . stay the trial of the action" when it compels arbitration, *see* 9 U.S.C. § 3, the Fourth Circuit has recognized that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l*, 252 F.3d at 709–10; *see also Adkins*, 303 F.3d at 498, 500 (affirming dismissal where all claims were arbitrable). As all of the claims asserted in this matter are subject to arbitration, the Court finds that dismissal of this civil action is appropriate. Moreover, Plaintiff had ample opportunity to dispute Defendants' contention, but she has failed to demonstrate any genuine issue of material fact that would preclude the Court from granting the motion to compel. Indeed, Plaintiff shows no sincere interest in pursuing this civil action and has chosen not to raise any challenge to dismissal of her claims. Consequently, the Court finds that a stay would serve no useful purpose, and a dismissal is proper under the circumstances.

## IV. CONCLUSION

For the foregoing reasons, Pizza Hut's Motion to Dismiss, (ECF No. 7), is **GRANTED**, and Sugar Creek and New River's Motion to Dismiss or, in the Alternative, Compel Arbitration, (ECF No. 10), is **GRANTED**. As all of the claims are subject to arbitration, this matter is **DISMISSED**. The Court **DIRECTS** the Clerk to remove this action from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 24, 2019

THOMAS E. JOHNSTON, CHIEF JUDGE